IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATRINA C.,[1] | ) |
|       Plaintiff, | ) ) ) |
| | ) No. 20 C 3902 |
| v. | ) |
| | ) Magistrate Judge |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] | ) Maria Valdez ) ) |
|       Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Katrina C.'s claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 13] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 18] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Kilolo Kijakazi has been substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. PROCEDURAL HISTORY

On March 1, 2017, Plaintiff filed claims for DIB and SSI, alleging disability since April 3, 2015. The claims were denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 18, 2018. Plaintiff personally appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified. At the hearing, Plaintiff amended her alleged onset date to July 12, 2016.

On April 11, 2019, the ALJ denied Plaintiff's claims for benefits, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ALJ DECISION

Plaintiff's claims were analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of July 12, 2016. At step two, the ALJ concluded that Plaintiff had the following severe impairments: status post right knee replacement; obesity; arthritis of the left knee; and Sjogren's syndrome/rheumatoid arthritis. The ALJ concluded at step three that Plaintiff's

2

impairments, alone or in combination, do not meet or medically equal a listed impairment.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following additional limitations: can occasionally climb and balance; can never kneel, crouch, or crawl; and can perform frequent operation of foot controls. At step four, the ALJ concluded that Plaintiff is capable of performing her past relevant work as a check processing clerk, leading to a finding that she is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019)

4

(citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ relied upon false equivalencies and improper inferences to reject Plaintiff's statements about the severity and intensity of her symptoms; (2) the ALJ erred when she failed to accommodate any of Plaintiff's non-exertional deficits in the RFC assessment; (3) the ALJ's rejection of Plaintiff's treating orthopedist's opinion is unsupported; and (4) the ALJ's finding that Plaintiff could perform her past work is unsupported, and her failure to proceed to step five constitutes reversible error. Each argument will be addressed below in turn.

#### A. The ALJ's Assessment of Plaintiff's Symptoms

With respect to Plaintiff's first argument, this Court gives "the ALJ's credibility finding special deference and will overturn it only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations and citation omitted). Here, the ALJ found that "the claimant's statements concerning the intensity, persistence, and limiting effects of [Plaintiff's] symptoms are not

6

entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 22.)

In assessing Plaintiff's symptoms, the ALJ noted that Plaintiff had "a history of ongoing work activity through her original alleged onset date to her amended alleged onset date" and that Plaintiff "was self-employed as a baker for much of 2016." (*Id.*) The ALJ found that "the work activity in the record is inconsistent with her allegations of significant, debilitating knee pain since 2015." (*Id.*) Plaintiff takes issue with the ALJ's treatment of Plaintiff's prior ability to work and argues that "the ALJ mentioned the work activity prior to the amended onset date solely to undermine Plaintiff's capacity for truthfulness." (Pl.'s Memo. at 9.) However, "an ALJ may consider Plaintiff's 'prior work record and efforts to work' in assessing subjective symptoms." *Joshua L. v. Saul*, No. 20-cv-3213, 2021 U.S. Dist. LEXIS 215448, at *33 (N.D. Ill. Nov. 8, 2021) (citation omitted). That is what the ALJ did here, and she was entitled to do so. *See Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) ("Although the diminished number of hours per week indicated that Berger was not at his best, the fact that he could perform some work cuts against his claim that he was totally disabled."); *Kadelak v. Astrue*, 802 F. Supp. 2d 934, 944 (N.D. Ill. 2011) ("The regulations allow the ALJ to consider various factors, including Claimant's prior work record, in assessing credibility.").

Plaintiff next argues that "the ALJ improperly relied upon sporadic reports of improvement to suggest that Plaintiff had somehow reached a point at which she could work." (Pl.'s Memo. at 9.) As to improvement of Plaintiff's symptoms, the ALJ

7

noted that Plaintiff "responded well to [surgery] and engaged in activities generally inconsistent with her reports of ongoing complications." (R. 22.) The ALJ further noted that "[p]hysical therapy notes indicate progress . . . with the claimant being able to stand for increasing periods and limiting use of her cane." (*Id.* at 23.) The ALJ also noted that "[b]y January 2017, the claimant was noted to have had significant improvement with reported diminished use of pain medication and stable alignment of the [knee] joint." (*Id.*) The Court finds that, contrary to Plaintiff's assertion, the ALJ did not equate Plaintiff's improvements with an ability to work full time. The ALJ was entitled to consider improvements in Plaintiff's conditions in evaluating Plaintiff's subjective allegations. *See Dall. E. H. v. Kijakazi*, No. 20 C 2717, 2021 U.S. Dist. LEXIS 193956, at \*17 (N.D. Ill. Oct. 7, 2021) ("[T]he ALJ did not improperly equate improvement of Dallas's mental condition with an ability to work full time. Instead, the ALJ cited evidence of Dallas's improved mental condition as evidence that undercut his own subjective testimony that his symptoms were disabling. She appropriately determined that the objective evidence of improvement suggested that Dallas was not as limited as he claimed.") (citation omitted); *Ulloa v. Barnhart*, No. 01 C 9229, 2003 U.S. Dist. LEXIS 18724, at \*30 (N.D. Ill. Oct. 17, 2003) ("[T]he ALJ's opinion enumerated several specific reasons as to why she discounted Ulloa's testimony, including that: the medical records reflected substantial improvement in her symptoms which undermined Ulloa's allegations of disabling pain.").

8

Finally, Plaintiff argues that the ALJ "improperly relied upon a handful of unremarkable objective findings to suggest that Plaintiff was somehow exaggerating the extent of her pain." (Pl.'s Memo. at 11.) The Court finds that the ALJ reasonably assessed Plaintiff's pain symptoms. (*See* R. 23 ("Despite her complaints of ongoing symptoms and pain due to therapy, she indicated that she was able to cut grass around that time as well."); *id.* at 24 ("She was started on ongoing decreasing of pain medication and has generally indicated that Norco has been effective in managing her pain and has been receptive to nerve blocks.").) Along those lines, the Court finds that the ALJ reasonably determined that Plaintiff's subjective symptoms – on the whole – were not fully corroborated. *See Atkins v. Saul*, 814 F. App'x 150, 155 (7th Cir. 2020) ("Here, the ALJ otherwise explained his conclusion adequately. He explained that the objective medical evidence and Atkins's daily activities did not corroborate his subjective symptoms.") (citations and internal quotations omitted); *cf. Lacher v. Saul*, 830 F. App'x 476, 478 (7th Cir. 2020) ("The ALJ's rationale here was thin, but it was adequate to reflect her conclusion that the objective medical evidence and Lacher's daily activities did not corroborate his subjective symptoms."). Ultimately, Plaintiff has not shown that the ALJ's evaluation of his symptoms and allegations was "patently wrong," as was her burden. *See Horr v. Berryhill*, 743 F. App'x 16, 19–20 (7th Cir. 2018).

### B. The ALJ's Evaluation of Plaintiff's Non-Exertional Limitations

Plaintiff asserts that the ALJ erred in finding that she had only mild limitations in the area of concentration, persistence, and maintaining pace. In her decision, the ALJ stated as follows on that topic:

> The third functional area is concentrating, persisting, or maintaining pace. In this area, the claimant has no more than a mild limitation. The claimant alleges difficulties with completing tasks (Exhibits 5E; 9E). She has a short attention span. The claimant was not able to complete a functional assessment in 2019 after she struggled with tasks (Exhibit 33F). On the other hand, the record is generally limited for notable issues with concentration on mental status examinations (Exhibits 26F; 29F).

(R. 20.)

The ALJ was correct that the cited medical records do not indicate that Plaintiff has any issues with concentration, persistence, or pace. Indeed, in a Psychiatric Evaluation from August 2018, the Staff Psychiatrist noted as follows:

> She is dressed and groomed neatly. Good eye contact. She relates well. Speech is coherent relevant normal rate and note, not pressured. No auditory hallucinations. No visual hallucinations. No delusions. No thought disorder. No current suicidal ideation, plans or intent. No homicidal ideation, plan or intent. Oriented. Memory intact. Insight: good. Judgment: Good.

(*Id.* at 1662.) Similarly, mental health records from September and December 2018 notate Plaintiff's "[m]emory intact" and "[i]nsight good." (*Id.* at 1663-65, 1842.)

As explained by the ALJ, medical records do not indicate that Plaintiff had issues with concentration, persistence, or pace. As stated by the ALJ, "evaluations have been limited for notable issues with mood or cognition, with generally appropriate memory, judgment, and behavior." (*Id.* at 19.) The ALJ was not required to further prove a negative. The Court additionally notes that, in Function

10

Reports from August 2017 and November 2017, though checking numerous other boxes, Plaintiff did not check boxes to indicate that her conditions affected her ability to concentrate. (*Id.* at 283, 308.) Ultimately, the Court rejects Plaintiff's argument concerning the ALJ's findings on Plaintiff's issues with concentration, persistence, and pace.

Finally, Plaintiff devotes one sentence to an assertion that the ALJ failed "to factor in any effects of Plaintiff's obesity on her ability to function." (Pl.'s Memo. at 14.) However, the ALJ did expressly consider Plaintiff's obesity. (R. 24 ("[T]he undersigned does not find the claimant as limited as alleged considering all impairments, including obesity.").) Furthermore, the Court need not consider Plaintiff's wholly undeveloped argument. *See Hernandez v. Cook Cty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011) ("It is well established in our precedents that 'skeletal' arguments may be properly treated as waived.") (citation omitted).

### C. The Treating Physician Rule

Plaintiff argues that the ALJ erred by not giving more weight to the opinion of Dr. Mukind Komanduri, Plaintiff's treating orthopedist. Under the "treating physician rule,"[3] an ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other

---

[3] The Social Security Administration has modified the treating-physician rule to eliminate the "controlling weight" instruction. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ..., including those from your medical sources."). However, the new regulations apply only to disability applications filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply."). Plaintiff's application in this case was filed on March 1, 2017, and, therefore, the ALJ was required to apply the former treating physician rule.

11

substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must also "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *see also Adrian Z. v. Berryhill*, No. 17-cv-4585, 2019 U.S. Dist. LEXIS 129383, at *4 (N.D. Ill. Aug. 2, 2019) ("When an ALJ declines to give controlling weight to a treating physician's opinion, he must provide a sound explanation for the rejection.") (citation omitted). Even if a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308.

The ALJ stated as follows concerning Kr. Komanduri's opinions:

Limited weight is given to the statement of Mukund Komanduri, M.D., in treating notes for workers' compensation dated January 13, 2017. The claimant was found to be "doing very poorly" and with permanent ability to carry out light duty. Though the source is a specialist with an ongoing treating relationship with the claimant, the limits given were focused primarily on the claimant's ability to go back to her job as a demonstrator and not general work activity. Limited weight is also given Dr. Komanduri's report from November 15, 2018. The report was mainly a statement regarding the claimant's pain and the extent of limitations given was that she would not be able to sustain work. As no more specific limits were given, including how her knee condition and pain would affect her functioning, and her overall activities in the record, limited weight is given. The opinion is not consistent with the objective evidence or course of treatment, as described above.

(R. 24-25 (record citations omitted).) The ALJ further found that Dr. Komanduri's opinions were contradicted by the facts that Plaintiff "has been able to drive, travel out of state, mow a lawn, and go grocery shopping according to treating notes." (*Id.* at 25.)

12

Per these quoted passages, the ALJ discounted Dr. Komanduri's opinions because he opined as to a different job, his opinion's were unspecific, and his opinions were inconsistent with Plaintiff's daily activities. The Court concludes that the ALJ gave sufficiently good reasons for discounting Dr. Komanduri's opinions and finds that substantial evidence supports the ALJ's decision not to give the opinions controlling weight. *See Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) ("An ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician, . . . or when the treating physician's opinion is internally inconsistent, . . . as long as he 'minimally articulate[s] his reasons for crediting or rejecting evidence of disability.'") (citations omitted); *John E. v. Kijakazi*, No. 19 CV 1883, 2021 U.S. Dist. LEXIS 171096, at *38 (N.D. Ill. Sep. 9, 2021) ("[T]he ALJ also clearly considered Claimant's activities of daily living in the context of [treating physician] Dr. Jain's opinion . . . and ultimately concluded that they did not align with the comparatively severe limitations Dr. Jain propounded."). Furthermore, the ALJ was not required to accept Dr. Komanduri's conclusion that Plaintiff was "permanently disabled." That is a question to be determined by the Commissioner. *See Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) (claimant's ability to work is question reserved, by regulation, for the Commissioner).

13

### D. Plaintiff's Ability to Perform Past Relevant Work

Plaintiff devotes a single paragraph to an assertion that the ALJ erred in determining that Plaintiff could perform her past relevant work as a check processing clerk. The Dictionary of Occupational Titles describes that job as follows:

> Imprints payment data on checks, records payment details on check register, using checkwriting machine, and compiles summaries of daily disbursements: Receives checks and vouchers authorized for payment, selects specified check register form, and inserts form into checkwriting-machine slot. Depresses buttons to transcribe payment data from voucher into machine. Inserts blank check into additional slot and presses bar to imprint details on check register and check. Removes check and repeats procedure to process batch of checks. Turns key to release signature plate and removes plate when processing checks totaling more than designated amount and sets such checks aside for handwritten signature by authorized personnel. Pulls lever to clear machine and print total on individual register. Compares register total with total on adding-machine tape to verify accuracy of register totals. Corrects errors or returns vouchers to other personnel for correction. Compiles daily summary of payment amounts by bank, merchandise, and expense categories and totals amounts, using adding machine.

DOT, 219.382-010.

Crucially, here, Plaintiff has not raised any developed arguments contending that any of her asserted physical limitations preclude her from performing these job duties. Plaintiff does assert that because "the ALJ had conducted no analysis of Plaintiff's non-exertional functioning for purposes of RFC, her finding that Plaintiff could perform a semi-skilled job is not supported by substantial evidence." (Pl.'s Memo. at 15-16.) However, above, the Court has rejected Plaintiff's arguments concerning her alleged non-exertional limitations. As such, the Court rejects Plaintiff's final point of error.

## **CONCLUSION**

For the foregoing reasons, the points of error raised by Plaintiff are not well-taken. Accordingly, Plaintiff's motion for summary judgment [Doc. No. 13] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 18] is granted.

**SO ORDERED.**                        **ENTERED:**

**DATE:**     **January 21, 2022**                _____
                                                                     **HON. MARIA VALDEZ**
                                                                     **United States Magistrate Judge**